IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

FILED
SEP 12 2007
U.S. DISTRICT COURT
ELKINS WV 26241

JUDY A. ARBOGAST,

Plaintiff,

v.                       Civil Action No.: 2:04-CV-43 (MAXWELL)

MICHAEL J. ASTRUE[1],
COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## ORDER

The Plaintiff, Judy A. Arbogast, instituted the above-styled action in this Court on June 18, 2004, seeking judicial review of an adverse decision by the Defendant, the Commissioner of the Social Security Administration, pursuant to 42 U.S.C. § 405(g).

The Answer Of The Federal Defendant was filed on September 2, 2004, and, by Order entered September 3, 2004, the Court instructed the parties to file their cross motions for summary judgment, in accordance with the deadlines established by Local Rule of Procedure 83.12.

The Plaintiff's Motion For Summary Judgment and Brief In Support thereof were filed on November 3, 2004, and the Defendant's Motion For Summary Judgment and Brief In Support thereof were filed on November 3, 2004. The Plaintiff's Response To Defendant's Motion For Summary Judgment was filed on November 15, 2004.

---

[1] Michael J. Astrue became the Commissioner of Social Security, effective February 12, 2007, to succeed Jo Anne B. Barnhart. Under Fed.R.Civ.P. 25(d)(1) and 42 U.S.C. § 405(g), Michael J. Astrue is automatically substituted as the defendant in this action.

By Order entered November 15, 2004, the Court referred the cross-motions for summary judgment to United States Magistrate Judge James E. Seibert, pursuant to 28 U.S.C. § 636(b)(1)(B); Rule 72 of the Federal Rules of Civil Procedure; and Rule 7.02(c) of the Local Rules of Civil Procedure, with directions to consider the same and to submit to the Court proposed findings of fact and a recommendation for disposition.

On June 7, 2005, Magistrate Judge Seibert filed his Report And Recommendation, wherein he recommended that the Plaintiff's Motion For Summary Judgment be denied and the Defendant's Motion For Summary Judgment be granted. Specifically, Magistrate Judge Seibert found that the Administrative Law Judge properly decided that that Plaintiff did not have borderline intellectual functioning and was not mentally retarded; that the Administrative Law Judge properly assessed the opinions of the Plaintiff's treating and non-treating physicians; that the Administrative Law Judge gave proper functional limitations in the hypothetical posed to the Vocational Expert; that the Administrative Law Judge properly accounted for Plaintiff's mental limitations in the hypothetical to the Vocational Expert; and that the Administrative Law Judge was not required to add production quotas as one of Plaintiff's limitations.

Magistrate Judge Seibert's Report And Recommendation expressly directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court within ten (10) days after being served with a copy of said Report And Recommendation. Said Report And Recommendation further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

On June 16, 2005, an Objection to Proposed Findings Of Fact And Recommendation For Dispostion was filed by Plaintiff. In her Objection, Plaintiff objects to the Magistrate Judge's

findings regarding Plaintiff's IQ scores; the Magistrate Judge's findings regarding Plaintiff's examining and treating physicians; and the Magistrate Judge's findings regarding the hypothetical posed to the Vocational Expert and the limitations enunciated by Dr. Joseph. Additionally, with regard to her first objection, Plaintiff proffered new evidence in the form of a July 26, 2004, psychological evaluation of Plaintiff performed by Brenda Hinkle, M.A., and Robert Klein, Ed.D., of Family & Marital Counseling Center. Plaintiff asserted that the new test results confirm that she does, in fact, have low IQ scores and that this impairment should not only be considered a severe impairment but should also be found to meet Listing 12.05C.

After reviewing Magistrate Judge Seibert's Memorandum, Opinion, and Report And Recommendation; Plaintiff's Objection To Proposed Findings Of Fact And Recommendation For Disposition; and the entire record in this matter, this Court remanded this action to Magistrate Judge Seibert for further consideration of the issues raised by Plaintiff in her objections.

On January 31, 2006, Magistrate Judge Seibert filed Per Remand Memorandum, Opinion, and Report And Recommendation Social Security. Magistrate Judge Seibert again found that the Administrative Law Judge properly found that Plaintiff's IQ was not a severe impairment; that the Administrative Law Judge properly weighed and analyzed Dr. Joseph's opinion; that the Administrative Law Judge properly found that Dr. Malik and Dr. Byrd's opinion are not supported by medically acceptable clinical and laboratory diagnostic techniques; that the Administrative Law Judge had sufficient evidence to make a disability determination, therefore, he was not required to recontact Claimant's treating physicians; and that the Administrative Law Judge posed a proper hypothetical question to the Vocational Expert.

Magistrate Judge Seibert's second Report And Recommendation also expressly directed the parties, in accordance with 28 U.S.C. § 636(b)(1) and Rule 6(e) of the Federal Rules of Civil Procedure, to file any written objections thereto with the Clerk of Court within ten (10) days after being served with a copy of said Report And Recommendation. Said Report And Recommendation further advised the parties that a failure to timely file objections would result in waiver of the right to appeal from a judgment of this Court based thereon.

On February 10, 2006, a Second Objection to Proposed Findings Of Fact And Recommendation For Disposition was filed by Plaintiff. In her Objection, Plaintiff objected to the Magistrate Judge's findings regarding Plaintiff's IQ scores at step two and at step three of the sequential evaluation process; the Magistrate Judge's findings regarding Plaintiff's examining and treating physicians; and the Magistrate Judge's findings regarding the hypothetical posed to the Vocational Expert.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court is required to make a *de novo* review of those portions of the Magistrate Judge's findings to which an objection is made. After reviewing Magistrate Judge Seibert's Report And Recommendation and the entire record in this matter, this Court believes that, for the following reasons, it is appropriate to reject the Magistrate Judge's Report And Recommendation and to find that Plaintiff's medical conditions meet the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C.

I. **The Administrative Law Judge's decision regarding Plaintiff's IQ related impairment was not supported by substantial evidence.**

Plaintiff has argued that the ALJ improperly handled her IQ related impairment at both steps two and three of the sequential evaluation process.[2] The Court's decision regarding the step three

---

[2] The sequential evaluation process is a series of five "steps" that we follow in a set order. If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step

4

analysis renders Plaintiff's step two argument moot.

Plaintiff has argued that her condition meets the requirements of Listing 12.05(C) at step three of the sequential evaluation process. The Court agrees. After the conclusion of the ALJ hearing, the ALJ requested that Plaintiff be scheduled for a consultative psychological evaluation. (Tr. 66). Plaintiff attended said evaluation with Sharon Joseph, Ph.D. on March 1, 2002. (Tr. 291). Dr. Joseph's report shows that she was aware of Plaintiff's educational history and aware of Plaintiff's work history. (Tr. 291). WAIS-III testing revealed Verbal IQ 70, Performance IQ and Full Scale IQ 67. (Tr. 292). WRAT-3 testing revealed Reading at the third grade level, Spelling at the fifth grade level and Arithmetic at the third grade level. (Tr. 293). In regard to the IQ testing, Dr. Joseph wrote in the validity section of her report,

> ... it is possible that with her psychiatric condition she was achieving somewhat lower than her actual ability. It is also possible that, due to her lack of formal education, there may be a cultural influence. She did obtain her GED, therefore the Full Scale IQ score of 67 is somewhat suspect. It is felt that the claimant may have scored somewhat higher if she had not been so anxious and concentration had been better, although she may not have scored much higher. This is difficult to assess without previous educational records. *Testing should be repeated at a later time when the claimant is able to concentrate more fully and educational and GED records should be obtained. (emphasis added)* (Tr. 293).

Pursuant to Dr. Joseph's recommendation, testing was repeated. On July 26, 2004, Ms. Arbogast was seen by Brenda Hinkle, M.A. and Robert Klein, Ed.D. of Family & Marital Counseling Center for a full psychological evaluation (hereinafter Hinkle/Klein report). Upon WAIS-III testing Ms. Arbogast obtained a Verbal IQ 61, Performance IQ 72 and Full Scale IQ 62. These scores were determined to be valid. Ms. Arbogast's adaptive functioning was also tested with the Adaptive Behavior Assessment System (ABAS). Ms. Arbogast's adaptive

---

three to step four, we assess your residual functional capacity. (See paragraph (e) of this section.) We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

functioning was found to be in the extremely low range. Plaintiff submitted this report to the Court attached to her Objection To Proposed Findings Of Fact And Recommendation For Disposition. (*See* Doc. 17). Plaintiff argued that this evidence met the requirements of new and material evidence.

Plaintiff's elementary school records were also subsequently obtained. Plaintiff's record shows that she attended school only to the seventh grade. (Tr. 338). She was in the first grade three times and in the seventh grade twice. (Tr. 338). Stanford Achievement testing in 1965, when Plaintiff was in the sixth and seventh grade, showed a grade equivalency score of 3.7. (Tr. 338).

Since the Magistrate first considered the issue of the Hinkle/Klein report, likewise, the Court will first address whether the report meets the requirements of new and material evidence. The Magistrate wrote,

> The ALJ's decision is dated August 6, 2002. Brenda Hinkle, M.A., and Robert Klein, Ed.D.'s opinion was rendered July 26, 2004. This opinion was made after the relevant time period and, therefore, does not warrant a remand.
>
> *See* Per Remand Memo., Opinion, and R & R Social Security, p. 4, filed January, 31, 2006, Doc. 20.

The Court finds that the Magistrate applied the incorrect legal analysis to this issue. 42 U.S.C.A. § 405(g) states,

> The court may ... at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding....

Thus, the issue of evidence submitted at the court level is not resolved simply by the date the new evidence originated. 42 U.S.C.A. § 405(g) requires Plaintiff to show that the Hinkle/Klein

6

report was 1) new, 2) material, and 3) that there is good cause for not submitting such evidence at the administrative level.

Upon reviewing the Hinkle/Klein report, the arguments of counsel and the relevant records, the Court finds that it meets all three requirements of 42 U.S.C.A. § 405(g). First, the Hinkle/Klein report is obviously new. It was not part of the administrative record.

Second, the Hinkle/Klein report is material. After evaluating Plaintiff at the request of the Commissioner, Dr. Joseph stated that just such additional testing was needed in order to properly assess the issue of mental retardation. (Tr. 293). Furthermore, the fact that the IQ testing contained in the Hinkle/Klein report was not conducted until after the ALJ's decision is not the pivotal fact here. Plaintiff could not have known of the need for additional testing until after Dr. Joseph's recommendation was made after the close of the hearing. Furthermore, this Circuit has held that IQ scores are assumed to be lifelong absent evidence to the contrary. In Branham v. Heckler, 775 F.2d 1271, 1274 (4th Cir. 1985) the Court held:

> The Secretary's regulations expressly define mental retardation as denoting "a lifelong condition." 20 C.F.R. subpart P, Appendix 1 § 12.00(B)(4). *Accord Mitchell v. Schweiker,* 699 F.2d 185, 188 (4th Cir.1983). And we think that there may be many reasons why an individual would not have had the opportunity or need to have a formal intelligence quotient test until later in life. The fact that one was not earlier taken does not preclude a finding of earlier retardation. We must and do assume, therefore, that in the absence of any evidence of a change in plaintiff's intellectual functioning from the time of his back injury to the time of his IQ test, that he had the same or approximately the same IQ (63) at the time of his back injury on October 24, 1979 as he did at the time of his 1982 test.

Finally, there is good cause in this case for failure to previously submit the Hinkle/Klein report. Initially, it is noted that the Hinkle/Klein report did not exist until after the administrative proceedings had concluded. The Court, however, finds quite persuasive the fact that Plaintiff could not have known of the need for the additional testing until after Dr. Joseph's recommendation set forth in an evaluation requested by the ALJ.

7

Therefore, the Court finds that Plaintiff has shown that the July 26, 2004 report from Brenda Hinkle, M.A. and Robert Klein, Ed.D. is new and material. The Court further finds there was good cause for not previously submitting said report at the administrative level. Accordingly, the Court could remand Plaintiff's case pursuant to the sixth sentence of 42 U.S.C.A. § 405(g). However, given the Court's decision on the issue of Listing 12.05(C) based on the administrative record, such a remand is not warranted.

The Court will now address the issue of Listing 12.05(C). To meet the requirements of Listing 12.05(C), Plaintiff must show that her condition meets all the requirements of the Listing.

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function ....

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C).

First, the Court is convinced that Plaintiff does have "a valid verbal, performance, or full scale IQ of 60 through 70" and, therefore, declines to adopt the Magistrate's Report and Recommendation. This Court instructed the Magistrate, upon remand, to consider the issue of Ms. Arbogast's eligibility under Listing 12.05(C) – a determination undertaken at step three of the sequential evaluation process. Dr. Joseph's testing revealed three scores within the Listing level (Verbal 70; Performance 70; and Full Scale 67). (Tr. 292-293).

It appears that the ALJ did not directly address Listing 12.05 but did discuss Listings 12.04 and 12.06. (Tr. 20, 23). The ALJ, and later the Magistrate, mischaracterized Dr. Joseph's

conclusions, stating that "[t]esting was administered to the claimant, and she achieved a Full Scale IQ of 67, which the examiner felt was suspect (i.e. invalid)" (Tr. 28). A reading of Dr. Joseph's actual report, however, reveals that substantial evidence does not support the ALJ's conclusion. Regarding the validity of her results, Dr. Joseph stated, "[s]he did obtain her GED, therefore the Full Scale IQ score of 67 is somewhat suspect." (Tr. 293). This statement is quite different from the finding of invalidity suggested by the ALJ. Dr. Joseph's report does not contain a finding that the Full Scale IQ score of 67 was invalid. More importantly, Dr. Joseph did not state any concerns in regard to the Verbal IQ score of 70 or the Performance IQ score of 70, both of which meet the requirements of Listing 12.05(C). Under the Regulations, a claimant need only have one such score, as, "[i]n cases where more than one IQ is customarily derived from the test administered, i.e., where verbal, performance, and full-scale IQs are provided as on the WAIS, the lowest of these is used in conjunction with 12.05." Id. at App. 1 § 12.00(D). Thus, the Court finds that either the Verbal or the Performance IQ score, neither of which Dr. Joseph questioned, meets the requirements of Listing 12.05C.

The Court is likewise convinced that Plaintiff had "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." As discussed above, Plaintiff's school records show that she repeated first grade twice and seventh grade once. (Tr. 338). Stanford Achievement testing in 1965, when Plaintiff was in the sixth and seventh grade, showed a grade equivalency score of 3.7. (Tr. 338). Hence, this testing showed that Plaintiff was *at least* three grades behind. (Tr. 338). Furthermore, the Court finds significant that achievement testing contained in Dr. Joseph's report confirmed that Plaintiff's adult reading ability is at the third grade level, spelling ability is at the

fifth grade level and arithmetic ability is at the third grade level.³ (Tr. 293). Thus, the Court finds that Plaintiff had "subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period" based on her need to repeat two grades, on her poor achievement testing results and on her poor grades.

Finally, it is clear that the Plaintiff's physical severe impairments at step two of the sequential evaluation process, which the ALJ found limited her to less than a full range of light work at step five, can be considered a physical impairment imposing an additional and significant work-related limitation of function.

In his Report and Recommendation, the Magistrate held that the ALJ had properly considered the issue of Listing 12.05C and that substantial evidence supported the ALJ's decision. In doing so, the Magistrate echoed the reasoning offered by the ALJ in his decision. The Court cannot adopt such a finding. As mentioned above, it does not appear that the ALJ ever specifically addressed Listing 12.05 despite having Dr. Joseph's report in the record. The Magistrate wrote,

> Although the applicable regulations direct our inquiry to the lowest of the three scores, the evidence in the record cast doubt on the validity of the Claimant's full scale IQ score of 67. There is no evidence other than Claimant's poor performance in school to suggest onset of an impairment before age 22. The absence of a record of treatment, diagnosis, or inquiry into a mental impairment prior to applying for benefits weighs against finding there is an impairment.

*See* Doc. 20, p. 4.

The Court cannot accept such reasoning because it is not supported by substantial evidence. The Magistrate acknowledged that the regulations direct the Listing 12.05(C) analysis to the lowest IQ score and then acknowledged that Dr. Joseph only questioned the Full Scale

---

³ The Court notes that such achievement levels are consistent with a diagnosis of mental retardation. The DSM-IV indicates that people with mild mental retardation "[b]y their late teens, they can acquire academic skills up to approximately the sixth-grade level." American Psychiatric Assoc., Diagnostic and Statistical Manuel of Mental Disorders, 4th Ed, 41 (1994).

10

score. It is not clear why he disregarded the Verbal and Performance IQ scores of 70. As discussed above, a close reading of Plaintiff's school records show more than just "poor performance in school." The Court feels that school records are likely the best evidence an adjudicator considering Listing 12.05(C) could expect a claimant to produce. Furthermore, the Magistrate's statement regarding treatment misses the very nature of mental retardation. Mental retardation is not curable or treatable with medicine. As the Fourth Circuit discussed in Branham, there are numerous reasons why individuals would have never undergone IQ testing. Listing 12.05(C) itself indicates that a mildly mentally retarded claimant is expected to be able to work up until the point that the second impairment exists.

Finally, the Magistrate wrote,

> The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied, not to substitute the Court's judgment for that of the Commissioner. In this case, the ALJ noted that Claimant managed to obtain her GED; was not in special education; reported reading newspapers and books regularly; and was able to concentrate and work sufficiently to handle the demands of housekeeping work in a supervisory capacity until recently. Additionally, Claimant's psychologist noted that her disorganization of thought was improved with medication.

See Doc. 20, p. 5 *(citations omitted)*.

The Court agrees with the Magistrate's statements regarding the scope of review. Thus, the Court on review is not required to accept the reasoning offered by the ALJ if, after reviewing the evidence, that reasoning is not supported by substantial evidence or not consistent with the relevant law. Such a case exists here.

It is unquestionable that Dr. Joseph was fully aware that Plaintiff obtained her GED and was not in special education. (Tr. 291, 293). Nevertheless, Dr. Joseph did not indicate that these factors had any bearing on the validity of Plaintiff's Verbal and Performance IQ scores. "In the absence of any psychiatric or psychological evidence to support his position, the ALJ simply

11

does not possess the competency to substitute his views on the severity of plaintiff's psychiatric problems for that of a trained professional." Grimmett v. Heckler, 607 F.Supp. 502, 503 (S.D. W.Va., 1985) (*citing* Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974), McLain v. Schweiker, 715 F.2d 866, 869 (4th Cir. 1983)). The Court notes that there is no evidence in this record that special education services were even available in the 1960's in the small rural West Virginia community of Elkwater where Plaintiff attended school. (Tr. 338). As discussed above, Plaintiff's reading ability has been objectively measured at only the third grade level. (Tr. 293, 338). The Court notes that the ALJ cited to exhibits 2E and 4E as supporting her conclusion. Exhibit 2E contains no such report by Plaintiff. (Tr. 88-97). A complete reading of Exhibit 3E shows that Plaintiff stated, "I try to read but I can't remember what I was reading." (Tr. 101). Hines v. Barnhart, 453 F. 3d 559, 565-566 (4th Cir., 2006). The ALJ's own statements do not support the conclusion that Plaintiff was able to handle the demands of housekeeping work in a supervisory capacity. The ALJ wrote, **"[t]he claimant's problems with her job suggest that she could not manage the demands of supervisory work...."** (*emphasis in original*) (Tr. 24). The ALJ further found that Plaintiff's "... housekeeping work is unskilled..." and that she cannot perform her past relevant work. (Tr. 30). Finally, the Magistrate earlier acknowledged that Plaintiff has not been treated for mental retardation, therefore, any medication obviously was not being prescribed for such condition. It appears that the Magistrate failed to consider these factors when reviewing the reasoning offered by the ALJ.

## II. CONCLUSION

For the above reasons, after making its required *de novo* review, pursuant to 28 U.S.C. § 636(b)(1)(C), this Court believes that it would not be appropriate to adopt the Report And Recommendation filed by Magistrate Judge Seibert in this case. (Doc. 16, 20). Rather, this Court

finds that Plaintiff's condition meets the requirements of 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C) and remands this action to the Commissioner solely for the calculation of benefits. The Court's decision on this issue renders Plaintiff's additional objections to the Magistrate's Report and Recommendation moot. As such, the Defendant's Motion For Summary Judgment is hereby **DENIED**, and the Plaintiff's Motion For Summary Judgment is **GRANTED**. The Court Orders that this action is hereby dismissed with prejudice and stricken from the active docket of the Court.

**IT IS SO ORDERED.**

The Clerk of Court is directed to transmit copies of this Order to counsel of record herein.

ENTER: _September 12_, 2007.

_____
United States District Judge